UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ODES INDUSTRIES, LLC | ) | CASE NO. 19-43582-elm11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ODES INDUSTRIES, LLC | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 20-04005-elm |
| | ) | |
| SMG DISTRIBUTION & | ) | |
| ASSOCIATES INC., LIL PICK UP INC. | ) | |
| and RENFENG WANG, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COMES Plaintiff Odes Industries, LLC ("Plaintiff"), the debtor-in-possession in the above styled bankruptcy, by and through its undersigned counsel, files this its Second Amended Complaint against SMG Distribution & Associates Inc., Lil Pick Up Inc., and Renfeng Wang (the "Defendants") and in support thereof would respectfully show the Court the following:

**I. PARTIES**

1. Plaintiff is a Texas limited liability company doing business in Tarrant County, Texas, at 580 Commerce Street, Suite 150, Southlake, Texas 76092. Plaintiff is a debtor-in-possession, as the phrase is defined in § 1101(1) of title 11 of the United States code, 11 U.S.C. §§ 101-1532.

2. Defendant SMG Distribution & Associates Inc. ("SMG Distribution") is a California corporation and may be served pursuant to rule 7004(b)(3) of FRBP by mailing a copy of the summons and complaint to its agent for service of process, Guiying Wang, at 19745 Colima Rd 1-518, Rowland Heights, CA 91748. Counsel for SMG Distribution, Michael P. Ridulfo, has entered an appearance in this proceeding and is being served via ECF.

3. Defendant Lil Pick Up Inc. ("Lil Pick Up") is a California corporation and may be served pursuant to rule 7004(b)(3) of FRBP by mailing a copy of the summons and complaint to its agent for service of process, Renfeng Wang, at 19745 Colima Rd 1-518, Rowland Heights, CA 91748. Counsel for Lil Pick Up, Michael P. Ridulfo, has entered an appearance in this proceeding and is being served via ECF.

4. Defendant Renfeng Wang ("Wang") is an individual and may be served pursuant to rule 7004(b)(1) of FRBP by mailing a copy of the summons and complaint to where Wang regularly conducts business at 19745 Colima Rd 1-518, Rowland Heights, CA 91748. Counsel for Wang, Michael P. Ridulfo, has entered an appearance in this proceeding and is being served via ECF.

## II. Nature of Amendments to First Amended Complaint

5. Plaintiff is the Debtor in possession in the underlying bankruptcy. Plaintiff designs, manufactures, and assembles Ultra Terrain Vehicles and sells them to ATV dealerships.

6. On January 24, 2020, Plaintiff file its Original Complaint solely against SMG Global, Inc. ("SMG Global") for turnover of estate property.

7. On July 13, 2020, Plaintiff filed its First Amended Complaint adding defendants SMG Distribution, Lil Pick Up, Wang, Robert Wu, and Massimo Motor Sports, LLC ("Massimo"). On that same day, Plaintiff also filed Emergency Application for Temporary Restraining Order and Preliminary Injunction.

8. A hearing on Plaintiff's preliminary injunction was conducted on August 6, 7, and 10, 2020.

9. On August 13, 2020, this Court issued a Preliminary Injunction (See Doc. 73) enjoined from taking any act with respect to the Inventory or proceeds of the Inventory.

10. On September 15, 2020, SMG Distribution, Lil Pick Up, and Wang filed their answer to Plaintiff's First Amended Complaint and Jury Demand.

11. This Second Amended Complaint incorporates the newly-discovered facts revealed to Plaintiff at the Preliminary Injunction Hearing and removes SMG Global, Robert Wu, and Massimo as defendants. The only remaining defendants in the above-styled adversary proceeding are SMG Distribution, Lil Pick Up, and Wang, who shall collectively be referred to as (the "Defendants").

### III. JURISDICTION AND VENUE

12. This adversary proceeding is commenced in accordance with FRBP 7001(a).

13. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1334(b) because it arises in, arises under, and/or related to the Debtor's Chapter 11 bankruptcy case.

14. This adversary proceeding includes core matters such that this Court has the authority to hear and determine those matters and enter an appropriate order or judgment. 28 U.S.C. § 157(b)(2). Specifically, this adversary proceeding includes a demand for the turnover of property of the bankruptcy estate. 11 U.S.C. § 157(b)(2)(E).

15. To the extend necessary, the Plaintiff consents to the entry of a final order or judgment by this Court with respect to any non-core matters within this adversary proceeding.

16. Venue is proper in this judicial district. 28 U.S.C. § 1409(a).

## IV. FACTUAL BACKGROUND

### A. Background of the Parties

17. Plaintiff was in the business of designing, manufacturing and distributing off-road vehicles – sometimes referred to as ultra-terrain vehicles ("UTVs") and all-terrain vehicles ("ATVs"). Michael Smith ("Smith") was a member-owner of Plaintiff and was the Chief Executive Officer of Plaintiff for most of the time that he was employed by Plaintiff. Plaintiff's customers were resale dealerships located throughout the United States and various countries across the world.

18. Plaintiff would design products and send the designs and work with Shandong Liangzi Power Co., Ltd. ("Shandong"), a Chinese entity that also did business under the name of Shandong Odes Industry Co. Ltd. after establishing a more formal business relationship with Plaintiff.

19. Wang was a former business partner of Odes and Smith. Smith met Wang in approximately 2011 when Smith was looking for manufacturers and assembly plants to partner with Plaintiff. Wang and his family, through Shandong, owned a manufacturing plant in China (the "Factory"). Through Smith's dealings with Wang, Smith also learned that Shandong did not have much of a distribution presence in the United States.

20. At this point in time, Plaintiff was looking to focus on design and sales while Shandong was trying to focus on manufacturing and distribution to the United States. Thus, Plaintiff's relationship with Shandong seemed promising in the beginning and was a mutually beneficial relationship for several years.

21. However, Plaintiff grew too quickly, and by 2016, Plaintiff was outpacing its credit lines. At this stage, Shandong began to advance inventory to Plaintiff on credit. Plaintiff was obligated to pay for goods only after the finished-out UTVs/ATVs were sold by Plaintiff.

22. Due to the importance of Shandong and the Factory to Plaintiff's business, and based on Wang's purported ability to help Plaintiff obtain additional access to credit, Wang was issued a 50% membership interest in Plaintiff.

23. By the end of 2017 or early 2018, Wang's ownership interest in Plaintiff was increased to approximately 70%, placing Wang in a position of control of the company.

24. Wang's ownership interest was increased because Wang promised Smith he was going to raise capital for Plaintiff in China. In order to raise said capital, Wang represented to Plaintiff that he needed to be the majority owner of Plaintiff.

### B. The Inventory

25. In Plaintiff's normal course of business, it would send purchase orders to vendors, and if the product would be coming from China, then Plaintiff would pay for the shipping and tariffs. Inventory purchased from Shandong was purchased on credit, with Plaintiff to make payment from sales proceeds generated from Plaintiff's sale of finished out UTVs/ATVs to its customers.

26. The Inventory in dispute in this case consists of both inventory purchased from Shandong and inventory purchased from domestic vendors within the United States. A complete listing of the Inventory at issue in this case is attached to this Complaint as Exhibit "1." A subset of the Inventory purchased by Plaintiff solely from domestic vendors is set out in Exhibit "2" also attached to this Complaint.

### C. Business Relationship between Smith and Wang Goes South

27. In 2018, Plaintiff experienced significant losses in its business upwards of $3,000,000. This was due in part to the tariff situation between the United States and China and also on Wang's unsuccessful plan to raise additional capital in China.

28. On November 30, 2018, Wang and Smith entered into an Exchange Agreement whereby Wang agreed to transfer back to Smith his 70% ownership interest in Plaintiff, and Smith transferred back to Wang ownership interest in some of Wang's affiliated entities. A true and correct copy of the Exchange Agreement is attached to this Complaint as Exhibit "3."

29. Also, in November, 2018 Wang informed Smith that there was a company in Indiana –SMG Global—that could be a potential business option to assist in assembly of the Inventory.

30. Wang's plan was for SMG Global to purchase product from the Factory and then handle the final assembly and finish-out of the UTVs/ATVs in the United States. Plaintiff would then purchase completed vehicles directly from SMG Global to fulfill Plaintiff's customer orders.

31. Wang represented to Plaintiff that this arrangement would enable Plaintiff to focus on design work, sales, and most importantly, SMG Global would also acquire most (if not all) of the Inventory for cash.

32. If this transaction had closed, it would have helped Plaintiff balance its operations by unloading unsold inventory and paying off debts and would have allowed Shandong to recover a substantial portion of its outstanding accounts receivable from Plaintiff through the SMG Global payment.

33. Based off Wang's representations and in reliance upon same, between December 5, 2018, and February 19, 2019, the Inventory was shipped from Plaintiff to a warehouse leased by SMG Global at 2580 S. 30th Street, Lafayette, Indiana 47909 (the "Indiana Warehouse"). Plaintiff drafted invoices to document this purported transaction as shown in Exhibit 1. The Inventory had an approximate value of $5,208,910.81.

34. On December 9, 2018 Wang also signed a Cooperation Agreement on behalf of Plaintiff with SMG Global. A true and correct copy of the Cooperation Agreement is attached as

Exhibit "4." Pursuant to the Cooperation Agreement, Wang on behalf of Plaintiff contracted with SMG to form an assembly line operation to build Inventory at the Indiana Warehouse. Plaintiff would be responsible for creating an assembly line-type process and SMG Global would provide the physical space as well as employees to finalize the Inventory into finished product.

35. As of December 9, 2018, Wang had no authority to enter into any agreement on behalf of Plaintiff due to the Exchange Agreement.

**D.  SMG Global Deal falls apart and Wang's Fraud is revealed**

36. The SMG Global never happened. Plaintiff has now learned that SMG Global claims it never had any agreement to purchase any of the Inventory.

37. Wang, again on behalf of Plaintiff with no authority, executed a termination of the Cooperation Agreement. A true and correct copy of the Termination Agreement is attached as Exhibit "5."

38. Plaintiff was not aware of the Cooperation Agreement or Termination Agreement until after it had filed bankruptcy. Want intentionally withheld disclosing to Plaintiff that he executed the termination of the Cooperation Agreement.

39. Plaintiff was still under the impression that the SMG Global deal was still in place and it was eagerly awaiting payment for the sale of the Inventory.

40. On numerous occasions, Wang represented to Smith that the SMG Global deal and subsequent payment would still be coming from SMG Global.

41. One of the excuses Wang provided was that the payment from SMG Global was delayed due to the Chinese banking system. This was never resolved because there was never an SMG Global payment.

42. While Wang was informing Plaintiff that the SMG Global payment was tied up, Wang developed and executed a plan to take the Inventory away from Plaintiff using a Shandong U.S. affiliate that Wang controlled, Lil Pick Up, along with a newly organized company under the control of Wang, SMG Distribution to repossess the Inventory from Plaintiff and deliver to Shandong.

43. Plaintiff discovered that a sublease agreement between Lil Pick Up and SMG Global was executed on May 1, 2019 for approximately 33,880 square feet of the Indiana Warehouse. By Lil Pick Up leasing part of the Indiana Warehouse, Wang and Lil Pick up were able to maintain possession, custody, and control over the Inventory.

44. Based off Wang's representations to Smith that SMG Global would be conducting business with (surprisingly similar name of) SMG Distribution, SMG Distribution began to make sales of UTVs/ATVs utilizing the Inventory.

45. In May 2019, Smith attempted to document the agreement that he thought existed among Plaintiff, SMG Distribution, and Shandong/Lil Pick Up, with Smith signing the agreement on behalf of Plaintiff and Wang signing the agreement on behalf of Shandong/Lil Pick Up. While still was still awaiting resolution of the purported SMG Global payment problem in China, Plaintiff continued to perform under what Smith believed to be the SMG Distribution agreement by purchasing finished-out UTVs/ATVs from SMG Distribution as customer orders came in to Plaintiff.

46. It is unclear when, but eventually, the Defendants took their operations and the Inventory to a warehouse located at 3101 West Miller Road in Garland, Texas (the "Texas Warehouse"). The majority of the Texas Warehouse is leased by Massimo and Lil Pick up leases a smaller portion of the Texas Warehouse.

47. Shown below is a picture taken on July 17, 2020 depicting how the inventory is being stored in the Texas Warehouse.



48. Plaintiff has since discovered that there was no SMG Global deal nor any SMG Global money tied up with the Chinse banking system.

49. Defendants have admitted before the Court they do not possess a security agreement.

50. Without a security agreement, or other contractual right to the Inventory, Defendants have no basis to retain possession and control of the Inventory.

51. The scheme that Wang concocted was nothing more than a sham to transfer ownership of Plaintiff's assets to Wang and his affiliated companies. Wang and the Wang Entities never had any intention of ever paying the amount due under the Invoices or otherwise fulfil the promises made to Plaintiff.

52. After Plaintiff's bankruptcy filing, on January 16, 2020, Shandong filed a proof of claim in Plaintiff's bankruptcy in the amount of $1,315,322.67 on the basis of goods sold. The

proof of claim was not secured. A true and correct copy of the Shandong proof of claim is attached to this Complaint as Exhibit "6."

53. This Adversary is brought so Plaintiff can recover the remaining Inventory from Defendants as well as recovery from past sales of the Inventory by the Defendants.

## V. CAUSES OF ACTION

### Count 1 – Fraud (Against Wang)

54. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

55. Wang made material misrepresentations to Plaintiff that were false, Wang knew the representations were false, Wang intended Plaintiff to act upon the representations, and Plaintiff actually and justifiably relied upon the representations and suffered injury as a result. *See Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

56. Specifically, on or about late 2018 through early 2019 Wang told Plaintiff that SMG Global was going to pay for the Inventory. Wang further represented to Plaintiff that SMG Global did pay, but the money was delayed in reaching Plaintiff due to the Chinese banking system. However, Wang knew there was never any SMG Global deal nor any money "stuck in the Chinese banking system." When Wang made these representations to Plaintiff, he knew they were false. Wang intended for Plaintiff to rely on these representations in order for Wang, SMG Distribution, and Lil Pick Up to be able to take the Inventory from Plaintiff. Plaintiff justifiably relied on these representations and was injured by the SMG Global payment never occurring and by Wang, SMG Distribution, and Lil Pick Up taking the Inventory from Plaintiff.

57. WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Wang in the above-captioned action in the amount of $5,208,910.81for fraud, (2) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court; and (3) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count 2 – Conversion (Against all Defendants)

58. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

59. Plaintiff owns and had a superior right to possession of the Inventory over that of Defendants, as Plaintiff has never been paid for the Inventory and only surrendered possession of the Inventory as a result of fraud perpetrated by the Defendants. The Defendants knowingly and intentionally took action without authorization to take possession and control of the Inventory and deprived Plaintiff of its right to possess the Inventory and/or control the disposition of the Inventory to third parties. The conduct of the Defendants in retaining, removing, and selling the Inventory in violation of Plaintiff's superior legal and possessory interest in the Inventory constitutes an improper exercise of dominion and control over such Inventory.

60. Although previous demand was made for the return of the inventory by Plaintiff, Defendants have refused to turn over possession of the Inventory to Plaintiff.   Accordingly, Plaintiff alleges Defendants have unlawfully converted the Inventory to the detriment of Plaintiff in an amount equal to the fair market value of the Inventory at the time and place of conversion.

61. WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against all Defendants jointly and severally, in the above-captioned action in the amount of $5,208,910.81for conversion, (2) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court; and (3) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count 3 – Turnover 11 U.S.C. § 542 (Against all Defendants)

62. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

63. Pursuant to Section 542 of the Bankruptcy Code, any party in possession, custody, or control of property of Plaintiff's bankruptcy estate must turnover and deliver such property to the Plaintiff.

64. Here's Plaintiff's bankruptcy estate is the rightful owner of the Inventory as the Defendants taken the Inventory from Plaintiff without any authority to do so.

65. Plaintiff is entitled to an order from this Court directing Defendants to immediately turnover to Plaintiff the Inventory.

66. WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Defendants in the above-captioned action requiring Defendants to turn over the Inventory and any delivering the proceeds of the sale of any Inventory, (2) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court; and (3) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count 4 – Conspiracy (Against all Defendants)

67. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

68. Defendants are a collective group of individuals or entities that were members of a combination of two or more persons. The objection of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means. Specifically, each of the Defendants conspired against Plaintiff to steal and/or misappropriate Inventory belonging to Plaintiff with no intention of compensating Plaintiff for the Inventory. Defendants had a meeting of the minds on the object or course of action against Plaintiff, and Defendants committed unlawful, overt acts to further the object or course of action. As a proximate result of the Wang Entities' conspiracy, Plaintiff has suffered actual, economic damages in the amount of $5,208,910.81, excluding costs and attorneys' fees.

69. WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Defendants jointly and severally, in the above-captioned action in the amount of $5,208,910.81 for conspiracy, (2) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court; and (3) such other and further relief to which Plaintiff may be

entitled at law or in equity.

**Count 5 – Fraudulent Transfers pursuant to 11 U.S.C. § 548 Act (Against all Defendants)**

70. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

71. Pursuant to 11 U.S.C. 548(a)(1)(B)(i), the trustee, or a debtor in possession pursuant to 11 U.S.C. § 1107(a), may avoid any transfer of an interest of the debtor in property that was made on or within 2 years before filing of the petition, if the debtor received less than a reasonably equivalent value in exchange for such transfer and (ii)(I) was insolvent on the date that such transfer was made or became insolvent as a result of such transfer.

72. At the time the Inventory was transferred from Plaintiff to Wang, SMG Distribution, and Lil Pick Up it was transferred without Plaintiff receiving reasonably equivalent value.

73. At the time of the transfer, Plaintiff was insolvent or became insolvent as a result of such transfer. As a proximate result of the Defendants' fraudulent transfers of Inventory or sales proceeds thereto, Plaintiff has suffered actual, economic damages in the amount of $5,208,910.81, excluding costs and attorneys' fees.

74. WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Defendants jointly and severally, in the above-captioned action in the amount of $5,208,910.81 for Fraudulent Transfers pursuant to 11 U.S.C. § 548, (2) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court; and (3) such other and further relief to which Plaintiff may be entitled at law or in equity.

**Count 6 – Fraudulent Transfers pursuant to the Texas Uniform Fraudulent Transfer Act (Against all Defendants)**

75. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

76. The Texas Uniform Fraudulent Transfer Act ("TUFTA") provides creditors of a debtor with the ability to pursue the avoidance of certain transfers by the debtor with actual and/or

constructive fraudulent intent, along with the right to recover from such avoided transfers. *See, e.g.,* Tex. Bus. & Com. Code §§ 24.005, 24.006 and 24.008. Pursuant to section 544(b) of the Bankruptcy Code, a trustee (or, as here, a debtor in possession pursuant to 11 U.S.C. § 1107(a)) may step into the shoes of a creditor holding such a TUFTA claim under specified circumstances. *See* 11 U.S.C. § 544(b)(1).

77. Pursuant to Tex. Bus. & Com. Code § 24.005, the Inventory was transferred by Plaintiff without receiving reasonably equivalent value in exchange for the transfer and Plaintiff was engaged or about to be engaged in business for which the remaining assets of Plaintiff were unreasonably small in relation to the business. Additionally, at the time of not receiving value, Plaintiff intended to incur, or believed or reasonably should have believed that Plaintiff would incur, debts beyond Plaintiff's ability to pay as they became due.

78. Plaintiff's transfer of the Inventory was done without receiving reasonably equivalent value as detailed by Defendants' plan. When Plaintiff made the transfer of Inventory it was engaged in business in which the remaining assets of Plaintiff were unreasonably small in relation to its business to continue and Plaintiff intended to continue to incur debt.

79. Pursuant to Tex. Bus. & Com. Code § 24.006, the transfer of Inventory was fraudulent as to present creditors because the transfer was made without Plaintiff receiving reasonably equivalent value and Plaintiff was insolvent at the time of the transfer or became insolvent as a result of the transfer.

80. Plaintiff is attempting to recover the transfer on behalf of unsecured creditors, namely Mark Campbell. See Doc. 21, p. 3, Case 19-43582.

81. WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Defendants jointly and severally, in the above-captioned action in the amount of $5,208,910.81 for Fraudulent Transfers pursuant to TUFTA or avoidance of the transfers of Inventory, (2)

Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court; and (3) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count 7 – Preferences pursuant to 11 U.S.C § 547 (Against all Defendants)

82. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

83. Pursuant to section 547(b) of the Bankruptcy Code, a trustee (or, as here, a debtor in possession pursuant to 11 U.S.C. § 1107(a)) may avoid any transfer of an interest of the debtor in property "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made – on or within 90 days before the date of the filing of the petition; or between ninety days and one year before the date of the petition, if such creditor was an insider . . ." *See* 11 U.S.C. § 547.

84. Here, the involuntary transfer of Inventory by Plaintiff to Wang, Lil Pick Up, and SMG Distribution benefitted the Defendants on account of antecedent debt. When the transfer was made, Plaintiff was insolvent.

85. Lil Pick Up and/or Wang constitute Insiders under 11 U.S.C. § 101(31). Lil Pick Up and Wang are considered an "affiliate" of Plaintiff as it indirectly controlled Plaintiff. See 11 U.S.C. § 101(31)(E). Additionally, Wang exerted control over Plaintiff and would be considered a managing agent of Plaintiff when the transfers were made pursuant to 11 U.S.C. § 101(31)(F).

86. WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Defendants jointly and severally, in the above-captioned action for all preferences discovered to have been made pursuant to 11 U.S.C. § 547, (2) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court; and (3) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count 8 – Attorneys' Fees (Against all Defendants)

87. Plaintiff incorporates herein all prior and subsequent allegations in this pleading.

88. Due to Defendants' actions, Plaintiff has been forced to retain the undersigned attorney to represent them in this action and have agreed to pay reasonable and necessary attorneys' fees. An award of reasonable and necessary attorneys' fees to Plaintiff would be equitable and just, and is authorized by Tex. Bus. and Comm. Code § 24.013 and Tex. Civ. Prac. & Rem. § 38.001.

## VI. PRAYER

Wherefore, premises considered, Plaintiff seeks damages against Renfang Wang, SMG Distribution Inc., and Lil Pick Up, Inc. as a result of their conduct, and further seeks such other or additional relief to which it may be entitled in law or in equity.

**Respectfully Submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
(817) 338-1616 phone
(817) 338-1610 fax

*/s/ Joseph D. Austin*
Alan B. Padfield
State Bar I.D. #00784712
abp@padfieldstout.com
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Joseph D. Austin
State Bar I.D. #24101470
jaustin@padfieldstout.com

*Special Counsel for Odes Industries, LLC*

Eric A. Liepins, PC

12770 Coit Road, Suite 1100
Dallas, Texas 75251
(972) 991-5591 phone

(972) 991-5788 fax

Eric A. Liepins
State Bar I.D. #12338110
eric@ealpc.com