IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ODES INDUSTRIES, LLC | § | CASE NO. 19-43582-ELM |
|     Debtor | § | |
| | § | |
| ODES INDUSTRIES, LLC | § | CHAPTER 11 |
|     Plaintiff | § | |
| | § | ADVERSARY CASE NO. 20-04005 |
| SMG GLOBAL, INC., SMG | § | JURY TRIAL DEMANDED |
| DISTRIBUTION & ASSOCIATES, INC. | § | |
| LIL PICK UP, INC., RENFENG WANG, | § | |
| ROBERT WU, AND MASSIMO MOTOR | § | |
| SPORTS, LLC | § | |
|     Defendants | § | |

## DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

## <u>TABLE OF CONTENTS</u>

SUMMARY OF RELIEF REQUESTED ........................................................................................ 1

JURISDICTION AND VENUE ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 2

    Summary of the Case ........................................................................................................ 2

    The Bankruptcy Case ........................................................................................................ 3

    The Adversary Proceeding ................................................................................................ 3

ARGUMENTS AND AUTHORITIES ..................................................................................... 6

A.     The Adversary Proceeding Is Predominated by Non-Core Issues ................................... 7

B.     The Bankruptcy Court Cannot Conduct a Jury Trial ....................................................... 10

    i.     Defendants have a right to a jury trial. ...................................................... 11

    ii.     Defendants have not waived their right to a jury trial. ............................ 11

    iii.     Defendants have not consented to a jury trial in the Bankruptcy Court. ................ 14

C.     Withdrawal Will Reduce Forum Shopping and Confusion ............................................. 14

D.     Withdrawal Will Promote Uniformity in the Bankruptcy Administration ...................... 15

E.     Withdrawal Will Foster Economic Use of Resources ..................................................... 15

F.     Withdrawal Will Expedite the Bankruptcy Process ......................................................... 16

CONCLUSION ............................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ................................................. 14

*Anderson v. Durant*,
    550 S.W.3d 605 (Tex. 2018) ................................................. 13

*BP RE, L.P. v. RML Waxahachie Dodge, L.L.C* (*In re BP RE, L.P.*),
    735 F.3d 279 (5th Cir. 2013) ................................................. 11

*Cage v. Hardy Rawls Enterprises LLC* (*In re Moye*),
    Chp. 7 Case No. 07-37770, Adv. No. 09-3265, 2009 WL 4823998 (Bankr. S.D. Tex. 2009). 15

*Carroll v. Timmers Chevrolet, Inc.*,
    592 S.W.2d 922 (Tex. 1979) ................................................. 13

*Curtis v. Loether*,
    415 U.S. 189 n.11 (1974) ................................................. 14

*Developmental Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
    462 B.R. 457 (S.D.N.Y. 2011) ................................................. 10

*Dietert v. Dietert* (*In re Dietert*),
    271 B.R. 499 (Bankr. S.D. Tex. 2002) ................................................. 15

*Ferguson v. DRG/Colony N., Ltd.*,
    764 S.W.2d 874 (Tex. App.—Austin 1989, writ denied) ................................................. 13

*Franzin v. Haynes & Boon, L.L.P.* (*In re Frazin*),
    732 F.3d 313 (5th Cir. 2013) ................................................. 11, 12

*Galaz v. Galaz* (*In re Galaz*)
    765 F.3d 426 (5th Cir. 2014) ................................................. 9

*Germain v. Connecticut Nat. Bank*,
    988 F.2d 1323 (2d Cir. 1993) ................................................. 14, 15

*Granfinanciera, S.A. v. Norberg*,
    492 U.S. 33 (1989) ................................................. 13, 15, 17

*Guffy v. Brown* (*In re Brown*),
    548 B.R. 590 (S.D. Tex. Bankr. 2016) ................................................. 9, 10

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ................................................. 7

*In re Clay*,
    35 F.3d 190 (5th Cir. 1994) ................................................. 18

*In re Moore*,
    739 F.3d 724 (5th Cir. 2014) ................................................. 11

*In re Odes Industries, LLC*,
    Case No. 19-43582-elm11 (N.D. Tex. Bankr. Aug. 31, 2019) ................................................. 3

*In re Stansbury Poplar Place, Inc.*,
  13 F.3d 122 (4th Cir. 1993) .......................................................................................... 14

*Johnson v. Williamson (In re British Am. Props. III, Ltd.)*,
  369 B.R. 322 (Bankr. S.D. Tex. 2007) ......................................................................... 18

*Katchen v. Landy*,
  382 U.S. 323 (1966) ........................................................................................................ 14

*Lagenkamp v. Culp*,
  498 U.S. 42 (1990) .................................................................................................... 16, 17

*Magers v. Bonds (In re Bonds Distributing Co)*,
  Chp. 7 Case No. 97-52130C-7W, Adv. No. 98-6044, 2000 WL 33682815, at *4 (Bankr.
  M.D.N.C. 2000) ............................................................................................................... 14

*Mead v. Johnson Group, Inc.*,
  615 S.W.2d 685 (Tex. 1981) ........................................................................................... 13

*Mirant Corp. v. The Southern Co.*,
  337 B.R. 107 (N.D. Tex. 2006) .................................................................................... 9, 10

*Odes Industries, LLC v. SMG Global, Inc. (In re Odes Industries)*,
  Chp. 11 Case No. 19-43582-elm11, Adv. No. 20-04005 (N.D. Tex. Bankr. Jan. 24, 2020)...... 4

*Stern v. Marshall*,
  131 S. Ct. 2594 (2011) ........................................................................... 8, 10, 16, 20

*Tex. Capital Bank, N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*,
  Chp. 11 Case No. 11-43725, Adv. No. 13-40332013 WL 5758632, at *2 (E.D. Tex. Bankr.
  Sept. 27, 2013) ................................................................................................................ 19

*Winkle Chevy-Olds-Pontiac, Inc. v. Condon*,
  830 S.W.2d 740 (Tex. App.—Corpus Christi 1992, writ dism'd) ................................... 12

*Wood v. Wood (In re Wood)*,
  825 F.2d 90 (5th Cir. 1987) .............................................................................................. 8

**Other Authorities**

11 U.S.C. § 542 ....................................................................................................................... 4, 6

11 U.S.C. § 547 .......................................................................................................................... 6

11 U.S.C. § 548 ....................................................................................................................... 5, 6

28 U.S.C. § 1331 ........................................................................................................................ 8

28 U.S.C. § 1334 ........................................................................................................................ 8

28 U.S.C. § 1334(a), (b) ........................................................................................................... 2

28 U.S.C. § 1408 ........................................................................................................................ 2

28 U.S.C. § 1409 ........................................................................................................................ 2

28 U.S.C. § 157(a) ..................................................................................................................... 2

28 U.S.C. § 157(b)(2) ................................................................................................................ 8

28 U.S.C. § 157(b)(2)(E) ........................................................................................ 4, 8

28 U.S.C. § 157(b)(2)(F) ............................................................................................. 8

28 U.S.C. § 157(c) ...................................................................................................... 12

28 U.S.C. § 157(d) ........................................................................................... 1, 2, 7, 20

28 U.S.C. § 157(e) ...................................................................................................... 18

FED. R. BANKR. P. 5011 ............................................................................................... 1

FED. R. BANKR. P. 7012(b) ......................................................................................... 12

FED. R. BANKR. P. 9033 ............................................................................................... 2

N.D. TEX. LOC. BANKR. R. 5011-1(a) ........................................................................... 1

ORD. OF REFERENCE OF BANKR. CASES AND PROC. NUNC PRO TUNC, *In re Misc. Ord. No. 33,*
No. 3:04-MI-00033 (N.D. Tex. Oct. 4, 1982) ......................................................... 2

TEX. BUS. & COMM. CODE §§ 24.001–.013 .................................................................. 5

TEX. CIV. PRAC. & REM. CODE § 24.008 .................................................................... 13

TEX. CIV. PRAC. & REM. CODE § 37.011 .................................................................... 13

TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011 ........................................................... 5

TEX. CIV. PRAC. & REM. CODE §§ 37.009 .................................................................. 13

TEX. CIV. PRAC. & REM. CODE 24.013 ...................................................................... 13

U.S. CONST. ART. III ................................................................................................... 1

**TO THE HONORABLE JUDGE OF THE COURT:**

Defendants SMG Distribution & Associates, Inc., Lil Pick Up, Inc., and Renfeng Wang (collectively, "Defendants") file this Motion to Withdraw the Reference (the "Motion") pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, Article III of the U.S. Constitution and the Northern District of Texas Local Bankruptcy Rule 5011-1(a) seeking to withdraw the reference to the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court"), as to all claims and causes of action asserted against Defendants in Adversary Proceeding No. 20-04005 (the "Adversary Proceeding"), and in support thereof, respectfully show as follows:

## SUMMARY OF RELIEF REQUESTED

1.     Pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011 and the Northern District of Texas Local Bankruptcy Rule 5011-1(a), Defendants respectfully move for an Order of the District Court of the Northern District of Texas, Fort Worth Division withdrawing the reference to the Bankruptcy Court of the Adversary Proceeding for all purposes, including all pre-trial matters.

2.     The Court should withdraw the reference because resolution of the Adversary Proceeding requires substantial and material considerations of state law, and Defendants have demanded a jury trial.  Moreover, Plaintiff Odes Industries, LLC's ("Plaintiff" or "Debtor") request for a monetary judgment requires a determination of pre-bankruptcy state law claims that the Bankruptcy Court may not adjudicate to final judgment.

## JURISDICTION AND VENUE

3.     Federal district courts have original and exclusive jurisdiction of civil cases under title 11 and original but not exclusive jurisdiction of proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 1334(a), (b). District courts can refer these cases

and proceedings to the bankruptcy court within that district. 28 U.S.C. § 157(a). Pursuant to Local Order, this matter is referred to the Bankruptcy Court. ORD. OF REFERENCE OF BANKR. CASES AND PROC. NUNC PRO TUNC, *In re Misc. Ord. No. 33*, No. 3:04-MI-00033 (N.D. Tex. Oct. 4, 1982) (the "REFERENCE ORDER"). The Adversary proceeding contains core and non-core matters pursuant to 28 U.S.C. § 157(b). Defendants do not consent to the entry of a final order by the Bankruptcy Court in connection with these proceedings, and to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.     The Defendants request that, solely with respect to this Motion, this Bankruptcy Court enter proposed findings of fact and conclusions of law for the Districts Court's *de novo* review, pursuant to FED. R. BANKR. P. 9033 and the REFERENCE ORDER.

5.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 .

## FACTUAL BACKGROUND

### Summary of the Case

6.     Plaintiff alleges that between 2018 and 2019, Defendants "defrauded and stole millions in unfinished ATV Products. . .." Plaintiff alleges that it provided $5,208,910.81 in inventory and other equipment and parts for which it has never been paid" (the "Inventory"). In point of fact, Plaintiff never owned the Inventory, because it never met its contractual obligations under the March 29, 2016 Product Supply Agreement (the "PSA") between Plaintiff and Defendant Lil Pick Up, Inc. ("LPU"). This PSA states that all items "sold to ODES hereunder shall be shipped or otherwise delivered ODES C.O.D. (Collect on Delivery)," and that LPU was to "remain the exclusive owner of all its inventory unless and until any such items of inventory are delivered to ODES or a third party." Plaintiff never made any payment to Defendants for the Inventory and Defendants deny that it was ever delivered as the parties intended under the PSA.

Further, Plaintiff was to pay to LPU $21,000.00 monthly in consideration of its rights to purchase. However, Plaintiff never made any such payments.

**The Bankruptcy Case**

7.      On August 31, 2019, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").[1] Pursuant to local order, this case was referred to this Bankruptcy Court. *See* REFERENCE ORDER.

8.      Since filing the petition, Debtor has been operating as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      LPU filed a proof of claim against Debtor asserting an unsecured claim in the amount of $250,000.00, representing money loaned to the Debtor. CLAIM NO. 24, Case No. 19-43582-elm11. This claim is not related to the issues in the adversary proceeding, it is for money loaned not related to the Inventory.  *See* DECL. OF REFENG WANG ¶ 26, Case No. 19-43582-elm11, ECF No. 46.

10.     There is no confirmed plan in this matter. However, a plan has been filed. *See* PLAN OF REORGANIZATION, *passim*, Case No. 19-43582-elm11, ECF No. 91.

**The Adversary Proceeding**

11.     On January 24, 2020, Plaintiff filed its Original Complaint (the "Original Complaint") initiating the Adversary Proceeding against SMG Global, Inc.[2] The Original Complaint alleged that SMG Global, Inc. had property of the estate in its possession that was subject to turnover under Section 542 of the Bankruptcy Code and that the proceeding was core matter under 28 U.S.C. § 157(b)(2)(E).

---

[1] *In re Odes Industries, LLC*, Case No. 19-43582-elm11 (N.D. Tex. Bankr. Aug. 31, 2019).
[2] *Odes Industries, LLC v. SMG Global, Inc.* (*In re Odes Industries*), Chp. 11 Case No. 19-43582-elm11, Adv. No. 20-04005 (N.D. Tex. Bankr. Jan. 24, 2020).

12. On July 13, 2020, Plaintiff filed the First Amended Complaint ("Amended Complaint"), which asserted causes of action against Defendants for the first time. *See* AM. COMPL., *passim,* Adv. No. 20-04005, ECF No. 10. The Amended Complaint asserted that Defendants committed fraud by misrepresentation to obtain the "$5,208,910.81 in Inventory and other equipment and parts for which it has never been paid,"[3] converted the Inventory by taking dominion over the Inventory without paying Plaintiff, that the Inventory must be turned over to the Plaintiff's bankruptcy estate pursuant to 11 U.S.C. § 542, that Defendants were involved in a conspiracy to obtain the Inventory without paying Plaintiff, that Plaintiff is entitled to rescission of an alleged contract to be placed in control of the Inventory, that Plaintiff is entitled to avoid the transfer of the Inventory pursuant to 11 U.S.C. § 548, that Defendants are liable for fraudulent transfers pursuant to the Texas Uniform Fraudulent Transfers Act (i.e., TEX. BUS. & COMM. CODE §§ 24.001–.013) ("TUFTA"), and that Plaintiff is entitled to declaratory judgment of ownership in the Inventory under the Texas Uniform Declaratory Judgment Act (i.e., TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011). *Id.* The Amended Complaint added numerous new Texas statutory and common law claims; and sought monetary damages in the amount "$5,208,910.81," attorneys' fees, post-judgment interest, and costs of court, for the first time. *See* AM. COMPL. ¶¶ 34, 43, prayer, Adv. No. 20-04005, ECF No. 10. On September 15, 2020, Defendants timely answered. *See* DEFS.' ANSWER TO PL.'S AM. COMPL., *passim,* Adv. No. 20-04005, ECF No. 83. Defendants disputed Plaintiff's ownership in the Inventory. *Id.* at DEFENSES AND AFFIRMATIVE DEFENSES ¶ 17. In Defendants' Answer, they denied the Bankruptcy Court's jurisdiction to enter a final order with respect to any non-core matter raised in the Bankruptcy Court over this matter. *Id.* at ANSWER ¶ 13. Defendants requested a trial by jury for all issues so

---

[3] The alleged inventory is purported to be the items listed on the invoices attached to Plaintiff's First Amended Complaint as Exhibit "A."

triable. *Id.* at DEFENSES AND AFFIRMATIVE DEFENSES ¶ 15. Defendants did not consent to have this trial conducted by the Bankruptcy Judge. *Id.*

13. Also on July 18, 2020, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction. *See* MOT. FOR TEMP. RESTRAINING ORDER AND PRELIM. INJ., *passim*, Adv. No. 20-04005, ECF No. 11. A hearing on the Preliminary Injunction occurred on August 6, 7, and 10, 2020. HEARING, ECF Nos. 54, 55, 66. After the hearing, the Bankruptcy Court entered a Preliminary Injunction against Defendants with respect to the Inventory. *See* PRELIM. INJ. ORDER, *passim*, Adv. No. 20-04005, ECF No. 73.

14. On October 26, 2020, Plaintiff filed its Second Amended Complaint ("Second Amended Complaint"). *See* SECOND AM. COMPL., *passim*, Adv. No. 20-04005, ECF No. 86. Therein, Plaintiff still pleads Defendants committed fraud by misrepresentation to obtain the $5,208,910.81 comprising the Inventory for which it alleges it has never been paid, converted the Inventory be taking dominion over the Inventory without paying Plaintiff, that the Inventory must be turned over to the Plaintiff's bankruptcy estate pursuant to 11 U.S.C. § 542, that Defendants were involved in a conspiracy to obtain the Inventory without paying Plaintiff, that Plaintiff is entitled to avoid the transfer of the Inventory pursuant to 11 U.S.C. § 548, that Defendants are liable for fraudulent transfers pursuant to TUFTA, and for the first time, that Plaintiff is entitled to preferentially avoid the alleged transfer to Defendants under 11 U.S.C. § 547. *Id.* Further, Plaintiff pleads for monetary damages in the amount $5,208,910.81, attorneys' fees, pre- and post-judgment interest, and costs of court. *Id.* In the Second Amended Complaint, Plaintiff removed all causes of action against former parties SMG Global, Inc., Robert Wu, and Massimo Motor Sports, LLC and these parties have been dismissed. . *See* ORDER GRANTING MOT. TO DISMISS, *passim,* Adv. No. 20-04005, ECF No. 92. On November 12, 2020, Defendants timely answered the Second Amended Complaint. *See* DEFS.' ANSWER TO PL.'S SECOND AM.

COMPL., *passim,* Adv. No. 20-04005, ECF No. 89.   Defendants again disputed Plaintiff's ownership in the Inventory. *Id.* In Defendants' Answer they again denied the Bankruptcy Courts' jurisdiction to enter a final order with respect to any non-core matter raised in the Bankruptcy Court over this matter. *Id.* at ANSWER ¶¶ 15–16. Defendants requested a trial by jury for all issues so triable. *Id.* at DEFENSES AND AFFIRMATIVE DEFENSES ¶ 23. Defendants did not consent to have this trial conducted by the Bankruptcy Judge. *Id.*

## ARGUMENTS AND AUTHORITIES

15.    Defendants request that this Court withdraw the reference as to all claims and causes of action asserted against them in this Second Amended Complaint pursuant to 28 U.S.C. § 157(d).  The scope of the Bankruptcy Courts' authority over referred cases is limited both by § 157 and by the Constitution.  In recognition of those limits, 28 U.S.C. § 157(d) grants this Court the authority to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

16.    The Fifth Circuit has set forth a number of factors a district court should consider in determining whether permissive withdrawal of the reference is justified "for cause shown." Those factors are:

(1)    whether the proceeding involves core or non-core issues;

(2)    whether a party has demanded a jury trial;

(3)    whether the withdrawal would promote uniformity in bankruptcy administration;

(4)    whether the withdrawal reduces forum shopping;

(5)    whether the withdrawal would foster the economical use of the debtors' and creditors' resources; and

(6)    whether the withdrawal would expedite the bankruptcy process.

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985).

17. The reference of the Adversary Proceeding to the Bankruptcy Court should be withdrawn because the Second Amended Complaint and the claims filed against Defendants include common-law claims based on alleged pre-petition acts and Defendants have demanded a jury trial. Under *Stern v. Marshall*, this Adversary Proceeding "is made of the stuff of the traditional actions at common law" and, accordingly, must be adjudicated to final judgment by an Article III Court. 131 S. Ct. 2594, 2609 (2011).

## A.    The Adversary Proceeding Is Predominated by Non-Core Issues

18. Turnover and preference are core proceedings. 28 U.S.C. §§ 157(b)(2)(E), 157(b)(2)(F) . However, Plaintiff's other claims for relief are non-core. A matter will be considered core "if it involves a substantive right provided by title 11 or if it's a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987). 28 U.S.C. § 157(b)(2) provides a non-exclusive list of matters that should be considered core, which does not include conversion, fraud, breach of contract, rescission of contract, TUFTA, and declaratory judgments. 28 U.S.C. § 157 (b)(2). These matters could not "only arise in bankruptcy case" (i.e., arising in), nor are they "substantive rights provided by title 11" (i.e., arising under), they are claims based on Texas state substantive law (though arguably, the law of California, the Uniform Commercial Code of Texas and/or California, and the Convention on the International Sale of Goods may also be involved). *Id.* (discussing 28 U.S.C. §§ 1331, 1334) . Therefore, these matters could have proceeded in state court and are only "related to" the bankruptcy proceeding, making them non-core. *Id.*

19. Proceedings seeking to "determine, avoid, or recover fraudulent conveyances" under 11 U.S.C. § 548 *may* be core proceedings, but not where a debtor is asserting the claim as the creditor being defrauded (i.e., TUFTA), because 11 U.S.C. § 548 is meant to recover property for the estate when the debtor has defrauded its creditors. *Galaz v. Galaz* (*In re Galaz*)

765 F.3d 426, 428–29, 431 (5th Cir. 2014) (noting a Debtor's adversary proceeding, where the debtor sought recovery for fraudulent transfers under 11 U.S.C. § 548 and TUFTA was not core because the claims existed in state law to recover the property for the defrauded debtor, as opposed to the normal bankruptcy paradigm under 11 U.S.C. § 548, which is to recover property that the debtor fraudulently transferred for the estate. Further, though TUFTA is essentially a proceeding to "determine, avoid, or recover fraudulent conveyances," elements which are listed as core, courts have routinely found that TUFTA claims, even if asserted through § 544 as a strong arm claim (which has not ever been pled by Plaintiff) are not core. *See Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 119 (N.D. Tex. 2006) (noting that even though unlawful conveyance claims under § 544(b) are classified as core in § 157(b)(2), they have non-core characteristics—such as, being predicated in whole or in part on state law—that would raise concerns if they were to be submitted to the adjudicatory jurisdiction of the bankruptcy court over the defendant's objection); *Guffy v. Brown* (*In re Brown*), 548 B.R. 590, 597 (S.D. Tex. Bankr. 2016) (noting that a trustee's strong arm § 544 claim for TUFTA relief was not a core claim).

20.    Further, The Supreme Court in *Stern v. Marshall*, made it clear that an analysis of a bankruptcy court's authority to enter final orders must be performed, notwithstanding the language of 28 U.S.C. § 157. 131 S. Ct. at 2620.  Thus, a bankruptcy court may enter a final order only if there is both statutory <u>and</u> constitutional authority for the bankruptcy court to do so. *Id.* at 2608 ("Although we conclude that § 157(b)(2)(C) permits the bankruptcy court to enter final judgment on [debtor's] counterclaim, Article III of the Constitution does not.").

21.    While the *Stern* decision has directed focus away from the statutory core/non-core distinction, for the purposes of determining whether to withdraw the reference the ultimate analysis is the same: if a case consists entirely—or *predominately*—of the type of claim where a

bankruptcy court is prohibited from entering final orders, then the reference should be withdrawn. *Developmental Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 466-67 (S.D.N.Y. 2011) (emphasis added).  Otherwise, "there will be no advantage to allowing the matter to be heard in bankruptcy court because this court will eventually need to review the Article I Court's determination *de novo* . . . ." *Id.  See also, In re Brown,* 578 B.R. at 597 (citing *Mirant Corp.* 337 B.R. at 122) ("when an adversary proceeding encompasses both core and no-core claims, courts have held that withdrawal of the reference is appropriate because it promotes judicial efficiency.").

22.     The Fifth Circuit has held that a bankruptcy court may enter a final judgment if state law claims "would necessarily be resolved in the claims allowance process."  *See In re Moore*, 739 F.3d 724, 728 (5th Cir. 2014).  "When a debtor pleads an action arising only under state-law . . . or when the debtor pleads an action that would augment the bankruptcy estate <u>but not necessarily be resolved in the claims allowance process</u>, . . . then the bankruptcy court is constitutionally prohibited from entering final judgment." *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C (In re BP RE, L.P.*), 735 F.3d 279, 286 (5th Cir. 2013) (internal citations and quotations deleted, emphasis added); *see also Franzin v. Haynes & Boon, L.L.P. (In re Frazin*), 732 F.3d 313, 319–24 (5th Cir. 2013) (conducting an extensive analysis of various counterclaims to determine whether any "would necessarily have been resolved in the claim-objection process" and concluding that the bankruptcy court lacked authority to enter a final judgment on certain of the counterclaims).

23.     Plaintiff seeks by its adversary proceeding to litigate the impact of contracts and the actions of the parties prior to his petition date and to determine if Plaintiff owned the Inventory prior to the petition date. SECOND AM. COMPL., *passim,* ECF No. 86. While resolution of these issues may "augment" the bankruptcy estate, the determination of them will not be done

in the "claims allowance process." None of the Defendants have filed a proof of claim related to the Inventory, so the Bankruptcy Court does not have to decide the rights in the Inventory as part of the claims allowance process. *Cf. In re Frazin*, 732 F.3d at 323 (a fee-forfeiture action and a malpractice action would be related to the attorney's fees applications, therefore they would be part of claim's administration). Further, Plaintiff's request for monetary judgment goes beyond the claims allowance process. Through Plaintiff's request for a monetary judgment, Plaintiff requests the Bankruptcy Court to determine all the claims against all Defendants.  Any determination of the claims would involve matters of state law and arise out of alleged prepetition acts. Defendants have not consented to entry of final orders or judgment by the Bankruptcy Court for these Claims.  *See* FED. R. BANKR. P. 7012(b).  Consequently, the Bankruptcy Court may not enter final orders or judgment on the non-core matters and requests for monetary damages in the Second Amended Complaint, but must instead submit proposed findings and conclusions to this Court for review, subject to objection, *de novo*.  28 U.S.C. § 157(c). This process would be inefficient. Accordingly, this factor supports withdrawal of the reference.

**B.    The Bankruptcy Court Cannot Conduct a Jury Trial**

24.    Defendants have a right to a jury trial on the monetary damage claims and state law claims.[4] Defendants have timely asserted that right, have not waived that right, and have not

---

[4] The majority of Plaintiff's previously and currently pled causes of action predominately carry legal remedies (i.e., monetary damages). *Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 747 (Tex. App.—Corpus Christi 1992, writ dism'd) (noting conversion carries montery damages as a remedy); *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (fraud can be remedied with monetary damages); *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981) (breach of contract can be remedied with monetary damages); *Ferguson v. DRG/Colony N., Ltd.*, 764 S.W.2d 874, 887 (Tex. App.—Austin 1989, writ denied) (rescission is a remedy for breach of contract if there is no adequate remedy at law (i.e., monetary damages));*Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979) (noting conspiracy is merely a way to assert joint and several liability against multiple parties for the other tort claims (i.e., fraud, monetary damages)); TEX. CIV. PRAC. & REM. CODE §§ 24.008, 24.013 (TUFTA allows "any other relief the circumstance may require," attorneys' fees and court costs); TEX. CIV. PRAC. & REM. CODE §§ 37.009, 37.011 (UDJA essentially the same as TUFTA). Plaintiff has pled for such monetary/legal relief. SECOND AM. COMPL., *passim,* ECF No. 86.

consented to the Bankruptcy Court conducting a jury trial. Since the Bankruptcy Court cannot conduct a jury trial, the District Court must withdraw the reference.

### i.    Defendants have a right to a jury trial.

25.    The Seventh Amendment provides the right to a jury trial in cases where the amount in controversy exceeds twenty dollars and the cause of action is to enforce statutory rights that are at least analogous to one which was tried at law (as opposed to equitable suits) in the late 18th century English courts. *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33, 41 (1989). This analysis requires (1) a comparison of the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity and (2) a determination as to whether the remedy sought is legal or equitable in nature. *Id.* at 42. The second prong is considered to be the more significant of the two. *Id.* Fraudulent transfer actions are suits at law, as are most of Plaintiff's claims against Defendants seeks to recover the Inventory and monetary damages. *See Id.* at 43.[5] Therefore, absent any waiver, Defendants have a right to a jury trial.

### ii.    Defendants have not waived their right to a jury trial.

26.    Typically, if a defendant has filed a proof of claim, courts have found waiver of the right to a jury trial in connection with that claim. The reasoning is that the claim allowance procedure in the bankruptcy court is a proceeding in equity. *See Katchen v. Landy*, 382 U.S. 323 (1966); *Germain v. Connecticut Nat. Bank,* 988 F.2d 1323, 1330 (2d Cir. 1993) ("[T]he right to a jury trial is lost not so much because it is waived, but because the legal dispute has been

---

[5] *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974) ("if a legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact."); *see also Magers v. Bonds (In re Bonds Distributing Co)*, Chp. 7 Case No. 97-52130C-7W, Adv. No. 98-6044, 2000 WL 33682815, at *4 (Bankr. M.D.N.C. 2000) (in a fraudulent conveyance claim, plaintiff sought both monetary damages, as well as the equitable remedy of a set aside; such combination, however, did not preclude the right to a jury trial); *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128–29 (4th Cir. 1993) (plaintiffs' requests for monetary damages, as well as equitable accounting, did not require that defendants would be denied their constitutional right to a jury trial on the fraudulent conveyance claims); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 422-23 (5th Cir. 1998) ("When claims involving both legal and equitable rights are properly joined in a single case, the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the legal claims before final court determination of the equitable claims.").

transformed into an equitable issue."). However, the mere filing of a proof of claim by a creditor does not necessarily mean the creditor waives its right to a jury trial. Instead, the loss of the jury trial right is tied to claim administration. Citing the Second Circuit, the bankruptcy court for the Southern District of Texas explained:

> We conclude that neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed. For a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims. Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue.

*Cage v. Hardy Rawls Enterprises LLC (In re Moye)*, Chp. 7 Case No. 07-37770, Adv. No. 09-3265, 2009 WL 4823998 (Bankr. S.D. Tex. 2009) (citing *Germain*, 988 F.2d at 1330) (noting further, that if the claim asserted in the bankruptcy has already been determined, the right to a jury trial still exists); *Dietert v. Dietert* (*In re Dietert*), 271 B.R. 499, 507 (Bankr. S.D. Tex. 2002) ("The creditor retains a right to a jury trial with respect to any issue that need not be adjudicated as part of the allowance of the claim or an objection to the claim.").

27.     In *Granfinanciera*, the Court held that a defendant who had not filed a claim against the estate was entitled to a jury trial on the trustee's fraudulent transfer claim. 492 U.S. at 36. The Court framed the issue as whether an action to avoid a fraudulent conveyance against a non-creditor was a matter of public right. *Id.* at 58-59. The Seventh Amendment protects the right to a jury trial for private rights, but not for public rights. *Id.* at 58. By filing a claim against the estate, the claimant invokes the bankruptcy court's equitable power and waives the right to a jury trial. *Id.* at 58-59 & 59 n.14. However because Defendants have not filed proofs of claim relating to any issue raised in the Second Amended Complaint, the Plaintiff's fraudulent conveyance action neither arose "as part of the process of allowance and disallowance of claims" nor was "integral to the restructuring of debtor-creditor relations." *Id.* at 58 (internal citations

omitted).  Defendants cannot be deprived of their right to a jury trial merely because Congress had designated fraudulent conveyance actions as core proceedings under the Bankruptcy Code. *Id.* at 58-59.

28.     One year later, in *Lagenkamp v. Culp*, the Court held that creditors in a preference action who had filed proofs of claim triggered the claims allowance process and the bankruptcy court's equitable authority to determine claims and objections thereto. 498 U.S. 42, 44 (1990). Therefore, the right to a jury trial did not attach because the claims allowance process was "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*" as the preference action would be determined as part of ruling on the proof of claim.  *Id.* at 44.

29.     In *Stern v. Marshall*, the debtor argued that the bankruptcy court had the authority to adjudicate a fraudulent inducement counterclaim because the creditor had filed a proof of claim.  131 S. Ct. at 2601.  The Court reaffirmed *Lagenkamp, but found* that the debtor's counterclaim against the creditor was not part of the claims-allowance process: "there was never any reason to believe that the process of adjudicating [the creditor's] proof of claim would necessarily resolve [the debtor's] counterclaim."  131 S. Ct. at 2617.

30.     Defendants SMG Distribution & Associates, Inc. and Renfeng Wang have not filed proofs of claim. LPU has only filed a proof of claim for an unrelated monetary loan that has nothing to do with rights in the Inventory. The same would not be adjudicated as part of the claims allowance process. Thus, the claims against them fall within *Granfinanciera* and *Lagenkamp*, and they should be entitled to a jury trial on the fraudulent transfer claim and preference claims.

31.     This is not a typical fraudulent transfer or preference dispute.  Not only does Plaintiff seek recovery of the Inventory, but Plaintiff also asks the Bankruptcy Court to award a

monetary judgment on the issues pled in the Second Amended Complaint. This requires the Bankruptcy Court to determine the pre-petition nature of the parties' relationship and ownership of the Inventory, find that fraud occurred, Defendants exercised improper dominion over the Inventory, and/or Defendants were involved in a conspiracy, that no defenses apply, and then award monetary damages against all Defendants. These too are not the type of claims that would be adjudicated in the claims allowance process.

32.     Additionally, the Original Complaint did not seek an award of monetary damages or a determination of the issues pled in the Second Amended Complaint. Instead, it only requested turnover pursuant to 11 U.S.C. § 542. *See* ORIG. COMPL. ¶¶ 15–17, ECF No. 1. It did not make this allegation against these Defendants. Plaintiff first made its argument that the Bankruptcy Court should award a monetary judgment—which requires a determination of the Claims—in the Amended Complaint. AM. COMPL., ¶ 34, 43, prayer, ECF No. 10. Therefore, there is no issue of timeliness.

### iii.     Defendants have not consented to a jury trial in the Bankruptcy Court.

33.     Without the consent of the parties, a bankruptcy judge lacks the authority to conduct a jury trial. 28 U.S.C. § 157(e) (the bankruptcy judge may conduct the trial solely with the "express consent of all the parties"); *In re Clay*, 35 F.3d 190, 196-97 (5th Cir. 1994). If there is a valid demand made for a jury trial and the bankruptcy court is unable to conduct that trial through consent, the appropriate course of action is for the district court to withdraw the reference so that it may conduct a jury trial. *Johnson v. Williamson (In re British Am. Props. III, Ltd.*), 369 B.R. 322, 326–27 (Bankr. S.D. Tex. 2007). Accordingly, for this additional reason, the reference of this matter should be withdrawn.

### C.     Withdrawal Will Reduce Forum Shopping and Confusion

34.     Withdrawal will not encourage forum shopping since the jury trial or any dispositive ruling must issue from the District Court.  Because the District Court is the court in which the jury trial on this matter will eventually occur, or from which final judgment must issue, there is no legitimate claim of forum shopping. This factor weighs in favor of withdrawal.

**D.     Withdrawal Will Promote Uniformity in the Bankruptcy Administration**

35.     Withdrawal of the reference will not affect the uniform administration of the Bankruptcy Case.  The administration of the Bankruptcy Case is not contingent on the resolution of this suit, it can be administered in the interim and any confirmed plan could be amended if necessary. *Tex. Capital Bank, N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.*), Chp. 11 Case No. 11-43725, Adv. No. 13-40332013 WL 5758632, at *2 (E.D. Tex. Bankr. Sept. 27, 2013), *report and recommendation adopted*, 11-43725, 2013 WL 5769916 (E.D. Tex. Oct. 21, 2013) ("[t]he claims in the Adversary Proceeding are predominantly based on state law, and there are no claims under federal bankruptcy law. Thus, the District Court's determination of the merits of these claims should not undermine any concerns for the uniformity of bankruptcy administration."). This factor weighs in favor of withdrawal.

**E.     Withdrawal Will Foster Economic Use of Resources**

36.     The withdrawal of the reference will foster economic use of resources, obviating the need for a burdensome process required as to the non-core proceedings under 28 U.S.C. § 157(c). *See In re Dallas Roadster, Ltd.*, 2013 WL 5758632, at *2 ("[w]hen core and non-core matters are raised in an adversary proceeding, withdrawal of the reference promotes the most efficient use of judicial resources.").

37.     Because the District Court will issue the final judgment in this proceeding, concerns regarding efficiency and uniformity weigh heavily in favor of withdrawal. Additionally, the case against these Defendants has just begun and because having one federal

court address the issues in this case, including the litigation process from here forward, preserves scarce judicial resources, by not having the matter tried to two separate judges, the reference should be withdrawn. Thus, concerns regarding the parties' resources and judicial economy strongly favor withdrawing the reference of this matter now, thereby allowing the assignment of the matter to a single judge for the duration of the proceeding.

**F.    Withdrawal Will Expedite the Bankruptcy Process**

38.    The Bankruptcy Court lacks authority to enter final orders on the vast majority of Plaintiff's claims.  As a result, the adjudication of the parties' claims will already require the entry of orders by the District Court.  Therefore, withdrawing the reference will not result in contradictory decisions that adversely affect the administration of the bankruptcy case. Moreover, after *Stern* there can be no doubt that the Plaintiff's claims fall well outside the Bankruptcy Court's purview.

**CONCLUSION**

39.    The Second Amended Complaint asserts claims against non-creditor entities and requests monetary relief, the amount of which requires a determination of the issues therein, including Plaintiff's claims or monetary damages.  Accordingly, the reference should be withdrawn.

For all of the foregoing reasons, Defendants pray that this Court (1) grant the Motion pursuant to 28 U.S.C. § 157(d) and withdraw the reference to the Bankruptcy Court as to all claims and causes of action asserted in the Adversary Proceeding, and (2) grant them such other and further relief as is just and appropriate under the circumstances.

Respectfully submitted,

KANE, RUSSELL, COLEMAN, LOGAN, PC

By:    */s/ Michael P. Ridulfo*

Michael P. Ridulfo
Texas Bar No. 16902020
mridulfo@krcl.com
T. Kelly McKee
Texas Bar No. 24114615
tmckee@krcl.com
5051 Westheimer, Suite 1000
Houston, Texas 77056
Telephone: (713) 425-7400
Facsimile: (713) 425-7700

ATTORNEYS FOR DEFENDANTS SMG
DISTRIBUTION & ASSOCIATES, INC., LIL PICK
UP INC. AND RENFENG WANG

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2020, the foregoing was served pursuant to the Court's CM/ECF filing system.

/s/ Michael P. Ridulfo
Michael P. Ridulfo

## <u>CERTIFICATE OF CONFERENCE</u>

By e-mail dated November 23, 2020, Plaintiff's counsel advised that this Motion is opposed.


/s/*Michael P. Ridulfo*
Michael P. Ridulfo